## No. 6679.

### STATE vs. MOSES HARRIS ET AL.

On the trial of a motion in arrest of judgment in a criminal case, evidence will not be admitted to prove any error complained of, unless the error appears on the face of the indictment, or the proceedings.

After a verdict has been returned in a criminal case, it is too late to object to the composition of the jury that rendered the verdict, on the ground that some of the jury were too ignorant, or too illiterate to understand the evidence. Such objection should have been made a ground of challenge to the disqualified jurors.

The objection that the jury in a criminal case were not summoned under an order of the court before which the accused was tried, will not be sustained, on a motion in arrest of judgment, when it appears that the jury was summoned by a competent officer, before a competent court.

In criminal cases this court have no jurisdiction of questions of fact.

APPEAL from the Fifth Judicial District Court, parish of Iberville. McVea, J.

J. H. Lamon, District Attorney, for the State.

Charles O. Lauve for defendant.

The opinion of the court was delivered by

DEBLANC, J. On the tenth of February, 1877, one George Washington was killed in the parish of Iberville. Four brothers, Moses, Robert, Henry and Joseph Harris, accused of the homicide, were arrested, indicted for manslaughter, tried, found guilty, and sentenced to hard labor in the State penitentiary for the space of seven years.

Three of the defendants—Joseph, Henry and Robert—attempted, but in vain, to obtain a new trial and arrest the judgment. They are now before us—and, as they did in the lower court—they contend here, that :

First—After the judge's charge to the jury, three of the jurors were taken out by the sheriff in the court-house yard, whilst the others were locked up in their room, and that this amounts to the prohibited separation which vitiates a verdict.

Second.—The jurors by whom they were tried and convicted are

State vs. Harris et al.

illiterate and not able to understand either the evidence adduced or the law cited on their trial.

Third—The order commanding the sheriff to summon the jurors for the term at which they were tried, was issued by the clerk, not—as' it should have been—under the authority of Charles McVay, who was then the judge of the Fifth District, but under the usurped authority of James L. Cole, who—at that date—had ceased to be a judge.

Fourth—They—the appellants—were already engaged in a scuffle with George Washington, when Moses joined them in the fight, stabbed and killed said Washington. That—as there was no complicity, nor concert of action between them and Moses, they—if at all guilty—are only guilty of an assault and battery.

1. There is—in this transcript—but one bill of exceptions; we are informed, by its recital, that—on the trial of the motion in arrest of judgment, three of the prisoners—Joseph, Henry and Robert—offered to prove the alleged separation of the jurors, and that the Judge excluded the evidence of that fact, on the ground that "the error of which they complain is not apparent on the face of either the indictment or the proceedings."

· The Judge held correctly.

8 R. R. 513 ; 10 A. 265 ; 14 A. 827.

2. The defendants were tried together, and—as they were entitled to forty-eight peremptory challenges—they must have been tried by a jury of their choice. If—as contended—the members of that jury could understand neither the evidence nor the law, and their ignorance rose to the height of a disqualification, they should have been challenged when tendered to the accused. It is now too late to urge that objection. They took the chances of a verdict in ·their favor, speculated—it may be—on the pretended ignorance of the jurors, and can not be allowed—after conviction—to again rely on that ignorance to claim the reversal of an unexpected verdict.

7 A. 284 ; 8 A. 515 ; 25 A. 537.

3. The jury was properly drawn and properly summoned. This is not contested. The jurors themselves might have objected that, though regularly drawn, though summoned by a competent officer, to appear before a competent Court, the order to summon them was not issued under the authority of the judge of that court, and that objection—on their part—might have justified their disobedience to that order, but it neither does, nor can justify the too tardy complaint of the three prisoners.

If tenable, that objection could have been successfully urged but on the first day of the term, and not after trial and conviction, not in a motion to arrest the judgment.

4. Three of the defendants insist that there was no complicity, no concert of action between them and Moses, and that it would be an infamy to allow the verdict returned against him to stand against them. This constitutes a question of facts, one which was heard and passed upon by the jury and the district judge, one which—under the plain article of the Constitution of the State, we are not authorized to examine and review.

C. 1868, Art. 74.

The faithful counsel representing the appellants has attached to the transcript the evidence taken on the preliminary examination of his clients. He appeals to us to weigh that evidence, and to protect—against what he denounces as a great injustice and a terrible wrong, these guiltless unfortunates.

We have read every page of that examination, and ascertained that on the tenth of February 1877, one George Washington was assaulted and pursued by four ruffians. That—when knife in hand, moved by the manifest intention of inflicting death, Moses was following and threatening his victim, his brothers who had seen the knife, who could not be mistaken as to his intention, continued both the assault and the pursuit.

Whilst retreating, Washington fell, and—when the constable reached the spot, he found the four monsters on the dying man. In his own words, one held him by the throat, one by the hair and ear, one was across his breast, and one appeared to be holding the feet.

When wrested from the grasp of those fiends, Washington was a corpse. A physician was called, examined the body, found that two mortal wounds had been inflicted, and inflicted—in his opinion—with two different blades; one had penetrated the heart, and—through the opening cut by the other, the deceased's intestines were protruding.

If we could consider the facts relied upon by three of the defendants, we would certainly conclude that the grand jurors by whom they were indicted have reduced the proportions of their crime—the Court, the proportions of a richly deserved penalty—that every one of them was a principal in a most revolting and cowardly murder, and that—under a proper charge—every one of them should have been hanged.

The hour has struck when felons of all grades should realize—or, if they fail to realize—should be taught that the mission of courts is not to protect them against the recoiling of a violated law, but to protect society against them, their criminal attempts and nefarious deeds. They should be effectually terrified, or inflexibly punished—and when, as defendants, they enter the court, reeking with the blood of murder, they should tremble and not hope.

The judgment appealed from is affirmed.